S. W. SCOTT & Co., INC., Respondent, v. SAMUEL W. SCOTT and SCOTT FIRE OFFICES, INC., Appellants.

First Department, February 21, 1919.

**Master and servant — right of former employee to solicit former employer's customers — when injunction denied — appeal — effect of affirmance by Court of Appeals without opinion — scope of review by Court of Appeals where Appellate Division has made finding of fact.**

In the ordinary agreement of employment there is no implied contract by the employee not to solicit the trade of customers of his employer after the termination of his employment. Such solicitation does not constitute unfair competition in the absence of an express agreement to the contrary. The employee may make use in his new employment of the knowledge acquired in the old, and if it involves no breach of confidence it is not unlawful.

But an employee cannot copy a list of his employer's customers with whom he has no personal dealings, and use that list either in his own or another business in competition with his former employer. Nor, if a list be furnished him, confidentially, for a use other than solicitation for a continuance of business, can he make use of that list for the purpose of solicitation of trade in competition with the former employer. Nor can he by false representations that he is still in the employ of his former employer obtain business for himself or another. In other words, he must not resort to false statements or unfair means to divert the customers

of his former employer to his new employer or himself, if he enters *into* competition with his former employer. But if his agreement of employment did not provide expressly that he, on the termination of his contract, would not engage in a similar business, and he enters upon a fair and open competition with the former employer, he can use the knowledge that he has acquired of the customers of his employer with whom he dealt, as to the needs of their business, the times when they were accustomed to order, or as to the date of the expiration, or the other terms and conditions of their contracts.

Where an insurance solicitor and underwriter of many years' experience and well known among insurance companies and brokers engaged in the business, entered into a contract of employment with the plaintiff to solicit insurance business, but did not agree that on leaving said position he would not engage in a similar business, he cannot be restrained after his resignation, in the absence of allegations of fraud, from carrying on the same kind of business and from soliciting insurance from customers of his former employer, especially where he did not acquire his knowledge of said customers while conducting his former employer's business.

When the Court of Appeals affirms without opinion, they are responsible only for the result and not for the reason given in the opinion of the lower court by which it arrived at the result.

When the Appellate Division has made a finding of fact, the sole question presented to the Court of Appeals is whether there is any evidence tending to support the finding, for it can only review questions of law and it is only when there is no evidence in the case tending to support the finding that a question of law is raised by an exception to the findings of fact.

APPEAL by the defendants, Samuel W. Scott and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of January, 1919, granting an injunction *pendente lite.*

*Dickinson W. Richards* of counsel [*William H. Wurts* with him on the brief], for the appellants.

*Arthur K. Wing* of counsel [*Charles G. Hill* with him on the brief; *Wing & Wing,* attorneys], for the respondent.

PAGE, J.:

The affidavit of Walter L. Webster in support of the motion for a temporary injunction states that he knew the defendant Samuel W. Scott to be an experienced insurance solicitor and underwriter and well known among the various insurance companies and insurance brokers engaged in business in

New York city, and that he had an interview with the defendant Scott at which was discussed the organization of a separate department of W. L. Webster & Co., Inc., of which he, the said Webster, was president and general manager. As a result of this interview Scott wrote to Webster on May 29, 1917, as follows:

" Complying with your suggestion that a proposition from me, bearing upon the substance of our recent conversation, would be given consideration, I beg to submit the following:

" The field it is proposed to enter, I am convinced, as a practical underwriter, is one from which a good financial return may be expected, in due time, and I am prepared to sever my present connections and use my best efforts to secure the representation of companies for your office, for the purpose of soliciting brokerage business, and to place my services at your disposal for any other purposes.

" It may take some months, and require some traveling, to secure the number of companies necessary to make a profitable connection for the office, and while engaged upon this work I would ask as compensation the sum of $350 per month plus expenses.

" You expressed a willingness to ' gamble ' upon the proposition, and I am willing, for the present, to make a financial sacrifice, with the understanding that the matter of compensation will be readjusted when I perform my part of the agreement and the proposition shows results.

" Trusting that you may take favorable action upon my proposal, and asking the favor of your early advices, I am,

" Yours very truly,

" SAM W. SCOTT."

As a result of these negotiations Scott entered into the employ of W. L. Webster & Co., Inc., his duties being those of insurance solicitor, placer and manager of the said department. Through the efforts of Scott there were secured for W. L. Webster & Co., Inc., agency agreements with the Atlas Assurance Company, Ltd., Providence-Washington Insurance Company, Fire Association of Philadelphia and the Caledonian Insurance Company. On or about October 11, 1917, Webster believing that the business of the department

could be conducted better and more satisfactorily wholly separate and distinct from W. L. Webster & Co., Inc., the plaintiff corporation was formed, of which Webster owned the stock, 500 shares of which he paid for in cash and 4,500 shares were issued for the transfer of the agreements and business of the department, to which company with the consent of the insurance companies the agency agreements were assigned and turned over. The defendant Scott continued in the employ of the plaintiff as vice-president, director and manager of its said business until on or about August 31, 1918. During the month of August, 1918, Scott told Webster that he was going in business for himself. The parties do not agree as to the causes which led to this decision on Scott's part, nor is that material in the consideration of this matter. On August 27, 1918, Scott wrote Webster as follows:

" Confirming our conversation of the 26th inst. the substance of which was the present condition of the business and the outlook for the future, beg to state that after careful consideration, I have come to the conclusion that it would be better to discontinue the present arrangements and to operate on my own account, so that you may not suffer any further loss.

" If you have no use for the Scott Charter, etc., I have the following proposition to offer:

" In consideration of the transfer to me of the five hundred shares of stock of the Corporation, I will agree to reimburse you personally for the expense in securing the Charter, *i. e.,* $166.75, and to purchase the furniture, typewriters, supplies, now in the office, for $250.00 and to assume the lease of the office from September 1st, 1918.

" In addition I will collect for you all commissions on business accepted up to August 31st, 1918 (these will amount to about $2,500).

" Any outstanding bills or loans contracted before the 26th of August, 1918, to be paid for out of the commissions collected.

" If this proposition is acceptable to you, I would like to have the matter settled before August 31st, 1918.

" If not acceptable, I beg to tender my resignation as an officer of the Corporation, to take effect August 31st, 1918.

First Department, February, 1919.    [Vol. 186.

" Thanking you for all you have done to make the present arrangements agreeable and satisfactory to me, and regretting that the business has not prospered to the extent I anticipated, I am,                                     Yours sincerely,

                                        " SAM W. SCOTT,
                                            " *Vice Pres't.*"

Webster failing to accept this proposition, the letter was treated as a resignation and Webster states in his affidavit: " As there was no legal reason why he should not resign as an officer, director and employee of the plaintiff, I could make no objection thereto, and, accordingly, he did sever his connections with the plaintiff, on or about said date."

Scott thereupon incorporated a company named " Scott Fire Offices, Inc.," of which he is the president, a director and general manager and the owner of practically all the issued stock. It is alleged that since starting in business for himself, by means of said corporation Scott has solicited agency contracts with other insurance companies but has only succeeded in obtaining from the Atlas Insurance Company, Ltd., an agency contract similar to that held by the plaintiff so that now both the plaintiff and defendant Scott Fire Offices, Inc., have contracts with that company. It is further alleged that Scott has approached various insurance brokers, through whom the plaintiff has secured its business in the past and has sought to induce the said brokers to place through the defendant renewals of policies issued to their clients through the defendants.

The sole claim that the defendant is using any knowledge or information, that the plaintiff claims to have been confidential, is that by reason of the fact of his position with the plaintiff he learned the time when these policies expired. It is not claimed, however, that he made any copy of either the books of the company or any list of these policies, but solely that such knowledge was acquired by reason of his familiarity with the plaintiff's business.

An injunction *pendente lite* has been issued that:
" * * * the defendants and each of them and their respective agents, servants, employees and representatives be and each of them hereby is restrained from soliciting

or in any wise endeavoring to procure, and from accepting or entering into, upon or under any fire insurance agency or soliciting contracts, agreement, or any agreement by or under the terms of which they or any of them shall act as agent or solicitor for any of the following named insurance companies, to wit: The Atlas Assurance Co., Ltd., Providence-Washington Insurance Co., Fire Association of Philadelphia, and the Caledonian Insurance Co., and from soliciting or in any wise seeking to procure the renewal of any fire insurance policies from or through any brokers, or their clients, which said policies of insurance were originally issued through the plaintiff, acting as agent or solicitor for the company or companies issuing said policies, and from collecting or receiving any insurance premiums or commissions upon said renewal of fire insurance policies heretofore issued through the plaintiff as agent, broker or solicitor."

It will be noted that the defendant Scott in leaving the employ of the plaintiff did not break any contract of employment, nor was there any contract that on leaving the plaintiff's employ he would not engage in a similar business. Therefore, the injunction cannot be sustained on the theory that the defendant Scott is violating any contract right.

The injunction must be supported if at all upon the theory that a man who has been employed by another cannot thereafter engage in the same business, in competition with his former employer and solicit the business of his employer's customers. It is not alleged that while in the plaintiff's employ he tried to divert business from the plaintiff. It cannot be alleged that his acquaintance with either the insurance companies or the brokers was acquired while in plaintiff's employ. He had been in the insurance business in New York city for twenty years. It was because he was an experienced insurance solicitor and underwriter well known among the insurance companies and brokers, that Webster employed him to manage his new department. The plaintiff's theory seems to be that they could get the benefit of Scott's knowledge and experience acquired in the employ of others, but that because out of twenty years of business life in this one line of business he spent fifteen months in plaintiff's employ, he cannot devote his skill, knowledge and acquaintance in a business for himself,

because by so doing the plaintiff suffers some loss of trade. Such is not the law. As early as 1799 in a case (*Nichol* v. *Martyn*, 2 Esp. 732) in which a traveling salesman on the occasion of his last trip and while still in the plaintiff's employ, informed the customers from whom he had been soliciting orders for the plaintiff that he would shortly go into the same business for himself and that then he would be pleased to accept their orders for himself, the complaint was dismissed, Lord KENYON saying: " A servant while engaged in the service of his master, has no right to do any act which may injure his trade or undermine his business; but everyone has a right if he can to better his situation in the world; and if he does it by means not contrary to law, though the master may be eventually injured, it is *damnum absque injuria*. There is nothing morally bad, or very improper in a servant, who has it in contemplation at a future period to set up for himself, to endeavor to conciliate the regard of his master's customers, and to recommend himself to them, so as to procure some business from them as well as others."

It is well settled that in the ordinary agreement of employment there is no implied contract by the employee not to solicit the trade of customers of his employer after the termination of his employment. Nor does such solicitation constitute unfair competition, in the absence of an express agreement to the contrary. The employee may make use in his new employment of the knowledge he had acquired in the old. If it involves no breach of confidence it is not unlawful, " for equity has no power to compel a man who changes employers to wipe clean the slate of his memory." (*Peerless Pattern Co.* v. *Pictorial Review Co.*, 147 App. Div. 715, 717.) Even where the names of customers that the employee traded with were on a list or route book which was furnished him by the employer, it has been held that the discharged employee could solicit the trade of such customers where they conducted business places and publicly displayed the character of their business, and dealt more or less constantly with the employer's competitors. (*Boosing* v. *Dorman*, 148 App. Div. 824, 825; affd., 210 N. Y. 529.) The employee cannot copy a list of the employer's customers with whom he has no personal dealings, and use that list either in his own or another business

in competition with his former employer. Nor, if a list be furnished him, confidentially, for a use other than solicitation for a continuance of business, can he make use of that list for the purpose of solicitation of trade in competition with the former employer. Nor can he by false representations that he is still in the employ of his former employer obtain business for himself or another. In other words, he must not resort to false statements or unfair means to divert the customer of his former employer to his new employer or himself, if he enters into competition with his former employer. But if his agreement of employment did not provide expressly that he, on the termination of his contract, would not engage in a similar business, and he enters upon a fair and open competition with the former employer, he can use the knowledge that he has acquired of the customers of his employer with whom he dealt, as to the needs of their business, the times when they were accustomed to order, or as to the date of the expiration, or the other terms and conditions of their contracts. The case of *People's Coat, Apron & Towel Supply Co.* v. *Light* (171 App. Div. 671; affd., 224 N. Y. 727) is not in conflict with the principles above stated. Because the facts of that case were not fully stated in the opinion it is thought that this case has overruled the cases of *Peerless Pattern Co.* v. *Pictorial Review Co.* (*supra*) and *Boosing* v. *Dorman* (*supra*) and has established the law to be that an employee upon leaving his employer may not solicit the former's customers, knowledge of whom he obtained while in such employment. (See *People's Coat, Apron & Towel Supply Co.* v. *Light*, N. Y. L. J., Jan. 15, 1919.) That this misapprehension of the scope and effect of that decision is somewhat general is shown by the decision of the Special Term in the instant case and motions for reargument of other appeals in this court. An examination of the case on appeal in the Court of Appeals discloses that in the order reversing the judgment the Appellate Division made certain findings of fact, among which were that Light was intrusted with the names of over 350 customers, offices, stores and shops on the route and in the territory assigned to him, and with the names and addresses of over 1,000 customers on all the routes and in all the territories of the plaintiff over which he occasionally went, and that it was a

part of his duty to solicit new customers. for the procuring of which increased salaries were paid to the drivers. Evidently the list of customers that Light did not serve was placed in his hands that he might not waste his time soliciting business from present customers in his effort to get new business and hence was confidential in its nature. Furthermore, it was found that the defendants Light and Cohen conspired to go into the said coat, apron and towel supply business with the intention of soliciting the patronage and business of the customers of the plaintiff including those who had been served by the defendant Light while employed by the plaintiff and that the defendants are now making use of and employing the information obtained and secured by the defendant Light solely by virtue of his employment by the plaintiff and which was contained in the plaintiff's lists and route cards and route books; that Light in calling upon the said customers deceived certain of them into the belief and represented to them that he, Light, was still employed and serving them on behalf of the plaintiff, although in truth and fact he was then serving said customers on behalf of the defendant Cohen, and finally that the individuals referred to in the foregoing findings and being customers of the plaintiff, were not classified in any public trade list as probable or likely customers for service such as that furnished by the plaintiff. With these findings in the case the judgment was right and in accord with well-settled principles of equity jurisprudence. The affirmance of the Court of Appeals was without opinion. That court has repeatedly pointed out that when they affirm without opinion they are responsible only for the result and not for the reason given in the opinion in the lower court by which it arrived at the result. (*Rogers* v. *Decker*, 131 N. Y. 490, 493.) The affirmance of the judgment in that court means nothing more than upon the facts found and appearing in the record the judgment was right. It cannot be taken even as an expression of an opinion that the court would have found the facts to be as stated by the Appellate Division, for we must bear in mind that when the Appellate Division has made a finding of fact the sole question presented to the Court of Appeals would be, is there any evidence tending to support the finding, for it can only review questions of law, and it is only

when there is no evidence in the case tending to support the finding that a question of law is raised by an exception to the findings of fact. (*Acme Realty Co.* v. *Schinasi,* 215 N. Y. 495, 502; *Ga Nun* v. *Palmer,* 216 id. 603, 611; *Hall* v. *O'Brien,* 218 id. 50, 53.) Hence the affirmance by the Court of Appeals should not be interpreted as approving either the findings of fact or the reasoning of the opinion of the Appellate Division.

In the instant case, giving full effect to the facts as alleged by the plaintiff and every reasonable inference that can be drawn from them in plaintiff's favor, no grounds are disclosed for the granting of an injunction restraining the defendants from carrying on their business. The customers of the plaintiff whose trade it is alleged the defendants solicited are well-known insurance brokers having places of business where they openly transact business with the plaintiff's competitors. One of them was Scott's employer before he entered the employ of the plaintiff. Scott did not acquire his knowledge of these customers while conducting plaintiff's business, but it was because Scott was already favorably known to them, and could secure business from them that the plaintiff employed him. Likewise the contracts with the various insurance companies were secured by Scott for the plaintiff, by reason of the fact that he was well and favorably known to the executive officers of the companies. It was for the purpose of making this knowledge of Scott's available to the plaintiff and its predecessor that Scott was employed. It is alleged that Scott has secured an agreement with the Atlas Assurance Company, Ltd., similar to that held by the plaintiff, so that both Scott and the plaintiff solicit business for that company. It must be assumed that the Atlas Company had a right to make such a contract. It is not alleged that the contract with plaintiff was for a sole and exclusive agency. If the company had the right to give similar power to others to solicit business in New York city in competition with the plaintiff, the defendants had the right to accept such a contract and enter into such competition. Lastly it is claimed that Scott learned the dates of the expiration of policies placed through his connection with the plaintiff, and had been able to secure renewals of some of them through the agency of the defendant Scott Fire Offices, Incorporated. Unless it should appear, which is

not alleged, that this business was secured by means of some fraud, either by false representation, or trick or device, Scott had the legal right to solicit this business. He did not seek to have policies canceled which had been placed with plaintiff, but merely asked that when the new policy was issued it should be through this defendants' agency. A temporary injunction should not have been granted.

The order, therefore, will be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.