■ Robert B. Howard, Individually and as a Shareholder, Officer and Director of Syndac Investors, Inc., Doing Business as The Howard Companies, et al., Respondents, v Howard Carr et al., Appellants. [635 NYS2d 326] —Mikoll, J. P. Appeal from a judgment of the Supreme Court (Harris, J.), entered July 13, 1994 in Albany County, upon a decision of the court in favor of plaintiffs.

Plaintiffs commenced this action against defendants alleging, *inter alia*, that defendant Howard Carr had breached his duty of good faith under Business Corporation Law §§ 715 and 717 by converting business assets and opportunities of plaintiff Syndac Investors, Inc.

Plaintiff Robert B. Howard and Carr incorporated Syndac in 1981 for the purpose of selling and leasing commercial and industrial properties. Each owned 10 shares of Syndac stock.

Carr served as president and treasurer for which he received remuneration of $1,000 a month and fringe benefits. Howard served as vice-president and secretary. Howard's main form of compensation from Syndac was to share the profits due him as a 50% shareholder. The parties did business under the assumed name "The Howard Companies". Carr served as the day-to-day manager of Syndac while Howard was responsible for directing commercial real estate business to Syndac.

By 1985 Carr, in a letter to Howard dated October 21, 1985, sought dissolution of the relationship and offered to buy Howard out. Howard failed to reply. On November 1, 1985, Carr incorporated his own commercial real estate firm, defendant Howard Carr Companies Inc., of which he owned a 100% interest. It operated under the assumed name of "The Howard Group". He advised Syndac's sales associates by memorandum that he was no longer going to work for Syndac but would collect commissions due to Syndac. Between November 1 and November 18, 1985, Syndac and Howard Carr Companies operated from the same office and used the same phone. For some time, at Carr's direction, the phones at Syndac's office were answered "Howard Carr Companies". The locks were changed by Carr to exclude Howard from entry. Eventually all of Syndac's employees and sales associates went to work for Howard Carr Companies. On November 18, 1985, a special joint meeting of the Board of Directors and shareholders of Syndac was held. Howard's attempt to displace Carr was defeated by Howard voting in favor and Carr against. Carr claims he resigned as a sales employee of Syndac at the meeting but not as president. No writing of such resignation was offered at trial.

Following a nonjury trial, Supreme Court granted judgment in favor of plaintiffs and directed defendants to pay Syndac $556,810.64 in damages, $367,025.89 for Carr's wrongful diversion of business and commissions belonging to Syndac and $189,784.75 in damages for Carr's improper transfer of Syndac funds to Howard Carr Companies. Defendants moved for vacatur pursuant to CPLR 5015 and for reconsideration pursuant to CPLR 4404 (b). Upon reconsideration, the judgment was reduced to $375,671.61, $269,181.89 for diversion of Syndac business and commissions and $106,494.72 for improper transfer of Syndac funds. Prejudgment interest was set from May 1, 1986 at a rate of 8.66% per annum. Supreme Court likewise dismissed defendants' counterclaim.

This appeal ensued. Defendants urge that Supreme Court failed to articulate a legal and factual basis underlying its judgment and improperly adopted verbatim a substantial part

of plaintiffs' proposed findings of fact and conclusions of law without any independent analysis. Pursuant to CPLR 4213, the trial court must submit a statement of the ultimate and essential facts necessary for intelligent and effective appellate review of its decision (*see, C. R. Drywall v Wade Lupe Constr. Corp.*, 177 AD2d 821, 822). A trial court may incorporate findings of fact proposed by the parties in its decision (*Condello v Stock*, 283 App Div 400, 402; *see,* CPLR 4213 [a]).

We note that in this matter Supreme Court added its own handwritten changes to plaintiffs' submissions, added an additional summary of findings and arrived at substantially different conclusions of law than proposed by plaintiffs. Its decision to reduce damages upon rehearing further indicates that the court undertook an independent evaluation of the evidence in determining that Carr breached his fiduciary duty to Syndac. We note too from a perusal of plaintiffs' and defendants' proposed findings of fact, many of the court's findings are not controverted.

Addressing next defendants' challenges to Supreme Court's legal and factual conclusions, Carr urges that he was not precluded from entering into or engaging in business in competition with Syndac; that the formation of Howard Carr Companies did not constitute a breach of fiduciary duty to Syndac; that Carr, as an ex-employee, did not compete unfairly with Syndac and that the adoption of "The Howard Group" as a trade name did not constitute a breach of fiduciary duty to Syndac.

The law provides that officers and directors of a corporation stand in a fiduciary relationship to the corporation and owe their undivided and unqualified loyalty to the corporation, nor are they permitted to profit personally at the expense of the corporation (*see, Alexander & Alexander v Fritzen*, 147 AD2d 241, 246). Though participation in a business similar to that of the corporation is not precluded by an officer or director, conduct that cripples or injures the corporation is impermissible (*see, Bertoni v Catucci*, 117 AD2d 892, 895). Whether a breach of duty occurs is measured by the circumstances (*Burg v Horn*, 380 F2d 897, 901).

Applying these principles, we concur with Supreme Court's determination that Carr did in fact breach his duty toward Syndac. He virtually put Syndac out of business by taking all of Syndac's employees, sales associates and customers, converted its assets and created Howard Carr Companies to avoid sharing profits and proceeds with plaintiffs and made it impossible for Syndac to perform. His use of the assumed name "The

Howard Group" further obscured the situation and dealt a blow to the viability of Syndac operating as "The Howard Companies". Supreme Court correctly found that Carr is accountable for the diversion of Syndac's corporate assets and opportunities.

Addressing Supreme Court's findings of fact, we note that defendants concede that 66 North Lake/542 Washington and the Aussicker properties were Syndac deals.

Defendants challenge the award of damages as to the following properties based on their contention that these were nothing more than desires or hopes of Syndac: the BJ's refinance deal, the Route 155 deal, the 56 Sheridan Avenue deal, the One Hayner Heights deal, the 21 Aviation Road deal, the Wendy deals, the Marshall Plaza deals and the Grecian Terrace deal. We concur with Supreme Court's finding that such deals constituted " 'tangible expectanc[ies]' " of Syndac (see, Burg v Horn, 380 F2d 897, 899, supra). The record discloses that based on the dates of initial contact and/or the opening of files, most antedated the creation of Howard Carr Companies. Further, since Carr took over Syndac "lock, stock and barrel", the deals completed by Howard Carr Companies, especially in its first year of existence, would have been Syndac's but for Carr's disloyalty.[1] We find that Supreme Court properly found that defendants were liable for damages for these deals.[2] The court fashioned an appropriate award of damages where, as here, the documents were mostly controlled by defendants. Supreme Court is entitled to great deference as it was in the best position to judge the credibility of the witnesses that testified (see, Northern Westchester Professional Park Assocs. v Town of Bedford, 60 NY2d 492).

As to 13 Warehouse Road, defendants assert that the property owners, members of Carr's family, terminated the exclusive listing contract with Syndac and wished Carr to

1. There is nothing in the record to demonstrate that the 56 Sheridan Avenue and One Hayner Heights deals were initiated by Syndac. Listing agreements on both these properties were signed with Howard Carr Companies in February 1986. Nevertheless, it is submitted that such deals would have become deals of Syndac if not for Carr's actions.

2. Though defendants also argue that there is an absence of facts in the record with respect to the Route 155 deal, the record establishes that a deposit on such deal was placed in Syndac's escrow account and a sum of $10,000 was deposited into one of defendants' accounts on April 8, 1986 after the closing. Accordingly, it is submitted that damages of $10,000 were properly awarded.

handle the matter, and that the record is bereft of evidence that defendants caused the breach. Whether the breach was prompted by Carr or not, Carr, as officer of Syndac, was prohibited from benefiting from such breach which would have otherwise given Syndac $8,750 as a commission (*see, Bankers Trust Co. v Bernstein*, 169 AD2d 400, 401). Supreme Court's award of damages was thus proper under the circumstances.

As to 4 Airline Drive, Carr's attempts to justify his appropriation of commissions on this deal, based on Howard's alleged failure to bring commercial real estate deals to Syndac, fails. Any such actions on Howard's part would not excuse the fiduciary obligation Carr himself owed to Syndac. Supreme Court thus properly included the commissions which were used as Carr's capital contribution toward his interest in 4 Airline Drive in the damage awards.

Defendants also challenge the award of damages by Supreme Court for transfer of Syndac assets to defendants. Supreme Court determined that defendants improperly transferred assets of Syndac totaling $106,494.72. We find that the record clearly establishes that Syndac's escrow account was $26,500 when transferred and not $25,500 as found by Supreme Court and entered into the total calculation. The damage award should thus be increased by $1,000 to reflect the additional amount, that is $107,494.72.

Defendants challenge the award of $17,717 to plaintiffs for loans paid to defendants by associates for loans. The record shows that Howard Carr Companies made loans to associates of $10,783 but received repayments of $28,500. Since the associates repaying these loans to Howard Carr Companies were the same associates that were affiliated with Syndac, Supreme Court could infer that such overpayments were actually assets of Syndac. Accordingly, we find that $17,717 in loan overpayments were properly awarded to plaintiffs.

The record further supports Supreme Court's finding that the following monetary transfers to Howard Carr Companies were improper: October 15, 1985 ($10,000), November 18, 1985 ($1,223.17), January 10, 1986 ($11,000), September 25, 1986 ($1,191.40), September 25, 1986 ($90), September 25, 1986 ($349.64), September 25, 1986 ($585.09), October 7, 1986 ($30,000) and October 16, 1986 ($8,838.42). Defendants failed to account for these transactions. Carr's possession of the corporate records and admission that he commingled Syndac's funds with those of defendants justifies the court's inclusion of these transfers in its damage award.

The following modifications in damages are indicated by the

record as to real estate deals found by Supreme Court to be Syndac's deals with which findings we are in accord.

*Re: Wendy's Johnstown:* Supreme Court awarded damages of $10,480 and credited defendants with $4,520 as paid out to associate brokers from the total commissions of $15,000. The record exhibits indicate that the commissions paid to associate brokers was $9,000. The damages must be decreased by $4,480.

*Re: Wendy's Liberty:* Supreme Court awarded damages of $1,000 based on a commission of $13,000 less $12,000 in commissions to associates. The record exhibits indicate that a commission of $7,150 was paid to Ross and $650 to Krakower. Damages must thus be increased by $4,200.

*Re: Wendy's Monticello:* Supreme Court found damages of $2,580 based on a commission paid of $6,600 less $4,020 paid to associate brokers. The commission paid was in fact $6,700. Damages must thus be increased by $100.

*Re: Marshall's Plaza Papa Gino:* Supreme Court found damages of $6,833 based on a commission of $9,629 less commissions to associate brokers of $2,796. The record exhibits disclose that the commission of $9,629 paid on this matter related as well to the Marshall Plaza-Household Finance transaction. The commission for Papa Gino's is $6,540. The damages must be decreased by $3,089.

*Re: Marshall's Plaza-Household Finance:* Supreme Court awarded damages of $6,399.50 on commissions paid of $7,793.50 less commissions to associate brokers of $1,394. The total commission ultimately billed and paid per exhibit records was $3,089 with no co-commission paid. The damages must be decreased by $3,310.50.

*Re: 56 Sheridan Avenue:* Supreme Court awarded damages of $4,380 based on a commission of $8,530 less co-commission paid of $4,150. The record indicates that commissions of $8,515 were paid. The damages must be decreased by $15.

*Re: BJ's Northway Mall:* Supreme Court awarded damages of $40,834 based on commissions of $50,000 less $9,166 paid to a co-broker. The record indicates that the deal was closed before the November 1985 split and the money was paid into Syndac's account. Any improper transfer of assets from Syndac's accounts was considered by Supreme Court separately. Thus, this award of damages must thus be decreased by $40,834.

*Re: Other Village Square Accounts:* Supreme Court awarded damages of $37,550.30 based on a commission of $61,221.30 less $23,671 due to co-brokers. The record exhibits, however,

indicate payments of commissions of $50,000 on February 28, 1986, $17,118 on April 24, 1986, $1,125 on July 21, 1996 and $39,290.03 to Carr on September 24, 1986 for a total of $107,533.03 in commissions. This amount is to be decreased by $42,562.30 ($5,012 paid to a co-broker and $37,550.30 already awarded as damages by the court) for an increase of damages of $64,970.73. The remainder of damages as to this account are reflected in the improper transfers of assets which were separately taken into consideration by Supreme Court.

*Re: Wendy's Watertown:* Supreme Court awarded $12,500 in damages based on a commission of $18,500 less $6,000 paid to co-brokers. The record exhibits indicate commissions paid of $27,000 and a co-broker commission of $16,200 (exhibit 47). Damages must be decreased by $1,700.

As to the dismissal of defendants' counterclaim, defendants correctly urge that Supreme Court erred in failing to state the legal and factual basis for the action. However, we deem the record sufficient to permit this Court to render the appropriate findings of fact and conclusions of law with respect to defendants' claim that Howard breached his duties toward Syndac, in that he failed to prevent the alleged improprieties by Carr although he was in a position to do so, and should be estopped from maintaining a shareholder's derivative action to redress a wrong to the corporation (*see, Diamond v Diamond*, 307 NY 263). We disagree with defendants' contention. The record supports the conclusion that Howard fulfilled his fiduciary duties toward Syndac and took all reasonable steps to protect Syndac's interests. Defendants' allegations of breach of fiduciary duties refers to Howard's withdrawal of money from a Syndac account, causing various corporate checks to be returned for insufficient funds and causing a client to withhold payment of commissions properly earned by Syndac. Both these actions were properly undertaken to protect Syndac from defendants. The bank account funds were placed in a new account requiring two signatures for withdrawal. Howard never benefited from this account or from the withdrawal of funds.

We find no basis as well in defendants' allegation that Howard engaged in various commercial real estate deals without referring them to Syndac. Syndac's business involved commercial real estate while the deals alleged to constitute a breach involved only residential real estate. The counterclaim was thus properly dismissed.

Crew III, White, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by increasing the damages awarded to plaintiffs by $16,842.23, and, as so modified, affirmed.