In re UNIFLEX, INC., Debtor.

Uniflex, Inc., Plaintiff,

v.

Endurapack, Inc., and Hy Brownstein, Defendants.

Bankruptcy No. 04–11852 MFW.
Adversary No. 04–57093.

United States Bankruptcy Court,
D. Delaware.

Jan. 12, 2005.

Peter C. Hughes, Philadelphia, PA, for debtor.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion for Preliminary and Permanent Injunction filed by Uniflex, Inc. ("the Debtors") against Endurapack, LLC ("Endurapack") and Hy Brownstein ("Brownstein") (collectively "the Defendants") and the objection of the Defendants thereto. For the reasons set forth below, we will deny the Motion.

## I. BACKGROUND

The Debtor is a manufacturer and distributor of bags with 3,500 customers in the advertising, medical, security, retail and industrial packaging areas. It had in excess of 260 employees and sales exceed-ed $38 million a year. The Debtor competes in an industry with thousands of other manufacturers and over 16,000 distributors nationwide.

On June 24, 2004, the Debtor filed a voluntary petition under chapter 11. On September 13, 2004, the Debtor's Chief Executive Officer, Hy Brownstein resigned after nineteen years of service with the company. Brownstein never had a written employment contract with the Debtor and never entered into a covenant not to compete.[2] Shortly after resigning, Brownstein established a new business venture (Endurapack) which competes with the Debtor in one of its lines of business. Endurapack has only four full time employees and its sales are a mere fraction of the Debtor's sales.

On November 24, 2004, the Debtor filed the instant adversary proceeding against the Defendants asserting misappropriation of trade secrets of the Debtor, conversion, violation of the automatic stay, unfair competition, breach of fiduciary duty by Brownstein, tortious interference with contract, unjust enrichment, and requested turnover of the Debtor's property. Contemporaneously, the Debtor filed a Motion for a preliminary and permanent injunction against the Defendants. An evidentiary hearing was held on this Motion on December 2, 2004. At the conclusion of that hearing, we requested oral argument on the issue of whether a former officer has an ongoing fiduciary duty not to compete with his former employer. That issue was briefed and oral argument held on December 10, 2004. After a careful review of the cases cited and the facts presented

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. Brownstein had requested an employment contract with the Debtor on numerous occasions, which the Debtor refused to give.

in this case, we conclude that injunctive relief is inappropriate.

## II. *JURISDICTION*

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 157(b)(2)(O).

## III. *DISCUSSION*

### A. *Standard of Review*

■ A preliminary injunction should be granted only in extraordinary situations:

> Plaintiffs must show both that (1) they are likely to experience irreparable harm without an injunction and (2) that they are reasonably likely to succeed on the merits. A court may not grant this kind of injunctive relief without satisfying these requirements, regardless of what the equities seem to require. If relevant, the court should also examine the likelihood of irreparable harm to the nonmoving party and whether the injunction serves the public interest.

*Adams v. Freedom Forge Corp.*, 204 F.3d 475, 485 (3d Cir.2000) (citations omitted).

### B. *Likelihood of Success on the Merits*

■ To establish a likelihood of success on the merits, the Debtor must show that it would be entitled to relief under the law on which the claims are based.[3] In this case, we conclude that the Debtor cannot do so because we are not convinced that the Defendants have breached any duty owed to the Debtor.

The Debtor argues that it will be successful on the merits of its Complaint. In its Complaint the Debtor alleges that (1) the Defendants misappropriated trade se-

crets which enabled them to solicit clients away from the Debtor; (2) usurped the Debtor's corporate opportunities by competing with it in the same industry; (3) raided the Debtor's employees who were under employment agreements prohibiting them from competing with the Debtor; and (4) breached Brownstein's fiduciary duties in establishing a new business after leaving the Debtor's employ. The Defendants argue that the Debtor has not established that it will succeed on any of its allegations. We agree with the Defendants.

#### 1. *Trade secrets*

At the hearing, the Debtor failed to establish that Brownstein took anything that could be considered a trade secret. While there was evidence that other employees did remove some documents from the Debtor,[4] those documents have been returned and there is no evidence that the Defendants made use of any of them.

The Debtor argues that Brownstein has knowledge of the Debtor's pricing and other terms of dealing with clients that he learned while employed by the Debtor. However, Brownstein testified that the pricing information was available in the Debtor's files to anyone who worked there. We do not agree with Brownstein that this means the information is not confidential and do accept that the Debtor took reasonable means to keep it confidential.

However, Brownstein did convince us that the pricing information is of no use to him in his new venture. The Debtor is a manufacturer of bags and the pricing information reflects the cost to the Debtor of

---

**3.** The parties agree that those counts of the Debtor's complaint which rely on state law are governed by New York law.

**4.** There was evidence that approximately 40 documents were removed from the Debtor's

offices by Roy Walther and Myra Hyman before they resigned and went to work for EnduraPack. Those documents were returned after the Debtor made a demand for them.

making the bags. EnduraPack, on the other hand, is a distributor; its pricing is largely contingent on the cost to it from its supplier as well as the additional overhead costs it has. Knowing the Debtor's historical costs is not of much competitive advantage.

Furthermore, the law does not require Brownstein to forget everything he learned about the industry over his nineteen years in the business. *See, e.g., Frederick Chusid & Co. v. Marshall Leeman & Co.*, 279 F.Supp. 913, 918 (S.D.N.Y.1968) (holding that former employer "is not entitled to enjoin defendants from using the intangible procedures and techniques that defendants have learned while they were employed .... The interests of the public and the employees in the [defendant's] being permitted to pursue their trade entitle such employees to carry with them their 'faculties, skills and experience' that they have learned in their former position.").

Consequently, we conclude that the Debtor has not established a likelihood of success on this count of the Complaint or on the related counts of violation of the automatic stay or turnover of property of the estate.

### 2. *Usurpation of corporate opportunity*

To establish that the Defendants usurped a corporate opportunity, the Debtor must establish that they took a business opportunity in which the Debtors had a "tangible expectancy." *See, e.g., Abbott Redmont Thinlite Corp. v. Redmont*, 475 F.2d 85, 88 (2d Cir.1973). To meet that standard the Debtor must show more than that the Defendants took business that any other competitor might have taken; it must show that they took business that the Debtor would almost certainly have gotten if they had not been competing with it. *Compare Redmont*, 475 F.2d at 88–89 (former employer had almost a certainty to win business taken) with *S.W. Scott & Co., Inc. v. Scott*, 186 A.D. 518, 174 N.Y.S. 583, 589 (N.Y.App. Div.1919) (no business taken which would not likely have been won by competitors).

In this industry, customers do not have long-term contracts with suppliers, rather they select winning bids for each project based on price, delivery time and service. The industry is very competitive on those terms. The Debtor has only non-exclusive contracts with its clients and bids on work on a project-by-project basis like everyone else in the industry. With more than 16,000 competitors in the distribution business, the Debtor can have no expectancy of any new business from any specific customer. Therefore, the Debtor is not likely to be able to establish that the Defendants usurped any specific business that it expected to get from its clients. We conclude that the Debtor has not at this stage established a likelihood that it will succeed on this count of its complaint.

### 3. *Raiding employees*

The Debtor asserts that the Defendants tortiously interfered with contracts by inducing employees who had non-compete agreements to quit the Debtor and go to work for them. Specifically, the Debtor did establish that it had such agreements with two employees, Roy Walther and Myra Hyman, who were successfully induced to leave the Debtor and go to work for the Defendants. The Defendants assert initially that the non-compete agreements are unenforceable. In addition, Brownstein testified that he was unaware of the non-compete agreements and, once he was advised of them, he fired the two employees.

Since there is currently no violation, and there is a question about the validity of the non-compete agreements, we conclude that

injunctive relief is not necessary at this stage.

### 4. *Fiduciary duty*

The Debtor contends that, as a high-ranking officer of the Debtor, Brownstein owed it a common law duty of loyalty, which precluded him from soliciting the Debtor's employees and customers. *See, e.g., Am. Fed. Group, Ltd. v. Rothenberg,* 136 F.3d 897, 905 (2d Cir.1998) (defendant breached fiduciary duty by soliciting clients and employees for his new business while still employed by plaintiff). This is so even though Brownstein did not have an employment or non-compete agreement with the Debtor. The Second Circuit has explained the law as follows:

> First, and fundamentally, one who ... is a shareholder, officer and director of a closely held corporation, is under a duty "to deal fairly, in good faith and with loyalty" to the corporation and other shareholders. This requires that he exert his best efforts in behalf of the corporation and not compete with it or profit at its expense, or place his private interests in conflict with its. The scope of this fundamental duty is determined, however, by the circumstances of each case, and does not run to every act having any semblance of employee self-interest. Thus, merely taking steps not involving any dereliction of positive duties to a current employer in preparation for engaging in competition with that employer after leaving its employ may not involve any breach of fiduciary duty. One, however, clearly crosses the line by going further in preparatory steps by actively soliciting the customers of his current employer and diverting his current employer's business to himself.

*Id.* at 905–06 (citations omitted). *See also, Abraham Zion Corp. v. Lebow,* 593 F.Supp. 551, 571 (S.D.N.Y.1984) ("a former employee generally is not barred from competing with his former employer. A correlate of this right to compete after termination is the right to make preparation prior to termination to set up or enter into employment with a competing business.").

In this case, however, there was no evidence that Brownstein took any actions to begin to compete before he left the Debtor's employ. For example, there is no evidence that he solicited clients or employees before he left. Brownstein testified that he quit the Debtor in disgust over its inability to service clients and the pressure he was under because of the Debtor's deteriorating financial condition. He testified that it was only after he left that he decided to form a business to compete with the Debtor. The evidence presented so far supports this version: EnduraPack was not incorporated and did not start operating until after Brownstein left the Debtor. Therefore, we conclude that the evidence does not support a claim against the Defendants for breach of fiduciary duty.

The Debtor asserts nonetheless that Brownstein owes a fiduciary duty not to solicit the Debtor's clients or employees *after* he leaves the Debtor's employ. *See, e.g., Chusid,* 279 F.Supp. at 918 (stating that duty of loyalty continues after employment terminates). However, in the *Chusid* case, the employee was bound by restrictive covenants in his employment contract and had taken copyrighted material. Neither factors are present in this case, making it distinguishable from the *Chusid* case. Further, the case cited by *Chusid* for the proposition that there is a common law duty of loyalty that continues after termination does not, in fact, hold that. *See, e.g., Duane Jones Company, Inc. v. Burke,* 306 N.Y. 172, 190, 117 N.E.2d 237 (1954). In the *Duane Jones*

case, the prohibited activities also occurred pre-termination. Therefore, we are not convinced that there is unequivocally a post-termination continuing duty of loyalty. *See, e.g., Abraham Zion Corp.,* 593 F.Supp. at 571 (former employee generally is not barred from competing with his former employer in the absence of a written non-compete agreement); *Pangia & Co. v. Diker,* 291 A.D.2d 539, 741 N.Y.S.2d 242, 243 (N.Y.App.Div.2002) (fiduciary duties terminate with employment).

■ Even if such a duty did exist, the Courts generally consider the scope of the competition and activities of the employee in determining whether a breach of fiduciary duty has occurred. *See, e.g., Howard v. Carr,* 222 A.D.2d 843, 635 N.Y.S.2d 326, 328 (N.Y.App.Div.1995) ("Though participation in a business similar to that of the corporation is not precluded by an officer or director, conduct that cripples or injures the corporation is impermissible.").

In this case, the scope of the competition is de minimis (the Defendants have only $50,000 in gross sales to date). Further, since the Defendants have only four employees, the solicitation of employees is considerably more limited than in cases where courts have granted relief. *See, e.g., Chusid,* 279 F.Supp. at 916–17 (dealing with widespread departure by employees and solicitation of major clients); *Duane Jones,* 306 N.Y. at 181, 117 N.E.2d 237 (same).

Consequently, we conclude that the Debtor has not established a likelihood of success on the merits on this count of its Complaint.

C. *Irreparable Injury to the Moving Party*

■ The Debtor argues that it has and will suffer irreparable injury as a result of the actions of the Defendants. As noted, even if the Defendants were improperly taking clients from the Debtor, the injury to date is no more than $50,000 which is the total amount of the business which the Defendants have generated to date.

The Debtor argues further that the failure of its entire reorganization is attributable to the actions of the Defendants. It asserts that when it filed bankruptcy it had an agreement with an equity investor and its lenders about the outlines of a reorganization. Shortly after Brownstein left, the equity investor backed out and the lenders insisted the Debtor pursue a sale of its business. We are not prepared to conclude that any improper actions by the Defendants caused this turn of events, however. There was no testimony from the lenders or equity investor about their motives. Brownstein suggested that the Debtor's continuing financial decline, rather than his actions, caused the equity investor to get cold feet.

The Debtor also asserts that the sale of its business has been adversely affected by the defection of Brownstein. It asserted that several bidders failed to make a bid and that the stalking horse bid was reduced by $500,000 because of the actions of the Defendants. However, there was no evidence that the reduction in bid and failure of others to bid was attributed to the actions of the Defendants; other factors discovered in due diligence may have been the cause. There is simply insufficient evidence from which we can conclude that the actions of the Defendants caused the specific harms which the Debtor articulates.

More fundamental, however, is that the Debtor's arguments largely negate any conclusion that the Debtor suffered irreparable injury. Irreparable harm is present only if money damages could not make the Debtor whole. Here, the Debtor's damages are arguably limited to the drop in

the bid price of its assets (or $500,000). Furthermore, the Debtor's damages are not ongoing, because the auction has ended and the sale was approved on December 16, 2004. Thus, the Debtor has not adequately established it will be irreparably injured if the Defendants' conduct is permitted to continue.

### D. *Injury to the Nonmoving Party*

■ If the Debtor's motion is granted, Brownstein would be enjoined from participating in any manner in the Debtor's industry. This would effectively preclude Brownstein from being employed in the industry in which he has served for almost two decades. The equities balance in favor of the Defendants and not the Debtor on this point.

### E. *Public Policy*

■ While the Debtor argues that public policy favors debtors in reorganization efforts, that is not applicable here. The Debtor has sold its business and is now in liquidation. Further, the public policy of preventing unfair competition is not weighty in this case since we are not convinced that the Defendants are competing unfairly. The Thirteenth Amendment to the Constitution assures that all employees who are not otherwise bound by contract are free to leave their job at any time. This means they may be solicited by former employees or leave on their own and create a competing business. Thus, we conclude that public policy does not favor granting an injunction in this case.

## IV. *CONCLUSION*

For the reasons stated above, we will deny the Motion for a preliminary injunction.

An appropriate order is attached.

*ORDER*

AND NOW this **12th** day of **January, 2005,** upon consideration of the Motion for Preliminary and Permanent Injunction Against the Defendants and the Opposition thereto and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Motion for Preliminary Injunction is **DENIED.**